# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**SERANDON RAMON STARLING**  **PLAINTIFF**
**ADC #155140**

v.                              No: 4:22-cv-01073-PSH

**CANTRELL BASS,** *et al.*                              **DEFENDANTS**

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Serandon Ramon Starling, an Arkansas Division of Correction inmate, filed a *pro se* civil rights complaint on November 2, 2022 (Doc. No. 2) ("*Complaint*"). Starling alleged that defendants Lieutenant Cantrell Bass and Major Antonio D. Johnson (the "Defendants") violated his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, he alleged that (1) Bass used excessive force against him; (2) that Johnson failed to protect him from Bass' use of excessive force; and (3) that the Defendants left him naked in a freezing shower cage for more than an hour afterwards. *Complaint* at 14.

The Defendants filed a motion for summary judgment, a brief in support, and a statement of facts asserting that they are entitled to judgment as a matter of law on the merits of Starling's claims (Doc. Nos. 31-33). Starling filed a response, a brief

in support, and a response to the Defendants' statement of facts (Doc. Nos. 40-42). For the reasons set forth below, the Court grants the Defendants' motion for summary judgment.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials

. . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## III. Facts[1]

On January 25, 2022, Starling was found guilty of a major disciplinary violation for indecent exposure, failing to obey orders of staff, and an out-of-place assignment. *Defendants' Undisputed Facts* at ¶ 4. As a result of the disciplinary, Starling was sentenced to thirty days in punitive isolation. *Id.* at ¶ 5. On February 10, 2022, officers went to Cell Block 6 Cell 627 where Starling was housed. *Id.* at ¶ 6. The officers attempted to move Starling to west isolation so he could serve his punitive time, but he refused to move and asked to speak with a ranking officer regarding the move. *Id.* at ¶ 7; *Starling's Disputed Facts* at ¶ 2. Due to Starling's refusal to move, the officers contacted Bass to notify him of the situation. *Defendants' Undisputed Facts* at ¶ 8. Bass went to Cell Block 6 Cell 627 alone to talk to Starling. *Id.* at ¶ 9. Bass claims he told Starling he needed to move to serve his punitive time. *Id.* at ¶ 10. Starling disputes that Bass said anything other than, "you gone move!" before storming off. *Starling's Disputed Facts* at ¶ 3.

Bass then contacted Johnson to inform him that his assistance was needed in Cell Block 6 due to Starling refusing to be moved to west isolation for punitive time.

---

[1] Unless otherwise noted, these material facts are taken from: (1) Defendants' Statement of Undisputed Facts (Doc. No. 33) ("*Defendants' Undisputed Facts*"); Plaintiff's Response to Defendants' Statement of Undisputed Facts (Doc. No. 42) ("*Starling's Disputed Facts*"); the video exhibits submitted under seal (Doc. No. 43); the Deposition Testimony of Starling (Doc. Nos. 31-7 & 41 at 17 – 53) (the "*Starling Deposition*"); and the other exhibits provided by the parties. Disputed facts are noted. Opinions, legal conclusions, and immaterial facts are omitted.

*Defendants' Undisputed Facts* at ¶ 11. Due to Starling's continued refusals to move, Johnson approved a planned use of force team consisting of Bass, John, and Sergeant Aminnica Gardner. *Id.* at ¶ 12. Once the team was assembled, they went to Cell Block 6 Cell 627. *Id.* at ¶ 13. Bass and Johnson claim that they spoke to Starling about moving, but he refused. *Id.* at ¶¶ 14-15. Starling disputes that they talked to him at all before Bass sprayed him with OC spray. *Starling's Disputed Facts* at ¶¶ 4-5. He specifically disputes that the Defendants gave him "multiple direct orders to submit to handcuffs" before OC spray would be used, but acknowledges that he saw the spray in Bass' hand and that Bass stated "catch the cuffs twice in short succession" before administering the spray. *Id.* at ¶ 6; *Defendants' Undisputed Facts* at ¶ 16. Starling also disputes that Bass used a short burst of OC spray, and maintains that Bass sprayed him in the face and upper chest. *Starling's Disputed Facts* at ¶ 7; *Defendants' Undisputed Facts* at ¶ 17.

In his deposition, Starling described the events leading up to the use of force. *Starling Deposition* at 11-15.[2] He testified that an inmate two cells down from him (whom he did not know) had a mental episode and accused Starling of trying to take his door off and kill him with it. *Id.* at 11-12. An officer did a visual inspection of Starling's door due to those accusations and then left. *Id.* at 12. A few hours later,

---

[2] Deposition page numbers refer to the transcript page, not the page number on ECF.

officer Jackson arrived and informed him that he needed to pack so he could be moved to the hole. *Id.* at 13. Starling testified he was confused and wanted to speak to someone about it, and Jackson told him a lieutenant would not speak to him unless he refused to move. *Id.* He refused to move. *Id.* at 14, 47. Bass came to his cell about 30 minutes later. *Id.* at 14, 29. Starling testified he tried to speak to Bass, but Bass told him he had to move and he did not want to "hear none of that shit" and walked off. *Id.* at 14, 30, 48. Starling testified that Bass, Johnson, and Gardner returned, and he said he wanted to ask them a question about why he was being moved, but Bass only stated, "catch the cuffs." *Id.* at 14-15, 40. According to Starling, he asked to speak to them several times, but Bass and Johnson each shrugged their shoulders, and Bass sprayed him. *Id.* at 15, 40, 43.

The spraying incident was recorded on a handheld video, which has been submitted to the Court under seal (Doc. No. 43).[3] The video footage shows Bass at Starling's cell giving Starling an order to "catch the cuffs" and then quickly spraying inside the cell. *Handheld Video* at 00:00 – 00:03. The door to Starling's barred cell has a rectangular opening at waist-level through which a meal tray can be passed; an inmate's hands can also be placed through this opening so that they may be

---

[3] Three videos files were submitted. Exhibit E (MVI_0730) is the handheld video of the OC spray incident (the "*Handheld Video*"). Exhibits F1 (04_220210150510_0328) and F2 (03_220210150510_0328) show the hallway outside Starling's cell during the incident in question; there is no audio on the hallway videos.

handcuffed. After Bass sprayed him, Starling did not come near the door but paced around his cell. *Id.* at 00:03 – 00:27. Bass told Starling again to "catch the cuffs." *Id.* at 00:27. Starling continued to pace in his cell while Bass says to "come on" and gestures towards the door. *Id.* at 00:27 – 00:55. Starling finally backed up to the door and allowed Johnson and Bass to handcuff him through the slot in the door. *Id.* at 00:56 – 01:18. He then exited the cell. *Id.* at 01:19. An orange liquid can be seen on the back of his head, back, and waist.

Once Starling was restrained, he was escorted to a shower for decontamination. *Defendants' Undisputed Facts* at ¶ 19; *Handheld Video* at 01:20 – 04:22. Starling received medical attention from the unit infirmary while he was in the shower. *Defendants' Undisputed Facts* at ¶ 20. Bass provided Starling with a bar of soap to wash when Starling was placed in the shower to decontaminate. *Id.* at ¶ 51; *Handheld Video* at 5:34-5:37. Bass and Johnson left after Plaintiff was placed in the shower. *Defendants' Undisputed Facts* at ¶ 22; *Handheld Video* at 05:40 – 06:02; *Starling Deposition* at 53-54.

After Starling's shower, he was escorted to West Isolation Cell 19 by Sergeant Ellias and placed on behavior control. *Defendants' Undisputed Facts* at ¶¶ 21-22, 48. Starling claims he spent almost two hours in the shower after his 10-minute shower. *Starling's Disputed Facts* at ¶ 8. Starling asserts that Johnson knew he was in the shower for this length of time because he believes he overheard him ask Ellias

on the radio if they had gotten "that inmate out of the shower." *Defendants' Undisputed Facts* at ¶ 49; *Starling Deposition* at 66.

Other than the initial discomfort from being sprayed, Starling did not appear to sustain any injuries because of the force used. *Defendants' Undisputed Facts* at ¶¶ 40, 44; *Handheld Video* at 01:20 – 06:04. According to Starling's medical records, when the nurse visited him while he was showering, she "asked Starling was he ok and he replied yes." *Defendants' Undisputed Facts* at ¶¶ 41-43; *November 10, 2022 Medical Record* (Doc. No. 31-4 at 17). The nurse reported that there were no visible wounds/abrasions; Starling was able to voice his needs and concerns to the nurse; and there was no respiratory distress noted. *Id.*

According to the ADC's Use of Force Policy, non-deadly force may be used when necessary in order to restrain, maintain or regain control of an inmate, and non-deadly force is authorized for use to compel compliance with orders. *Defendants' Undisputed Facts* at ¶ 24. Starling points out that the policy further provides that employees are allowed to "use non-deadly force to compel an inmate to comply with lawful orders when other methods of persuasion are not effective and noncompliance jeopardizes the safety and security of the institution." *Starling's Disputed Facts* at ¶ 8; *ADC Use of Force Policy* (Doc. No. 33-3) at 2. Whenever force is used, internal affairs is notified and an investigation is conducted. *Defendants' Undisputed Facts* at ¶ 25. Internal affairs was informed of the use of force involving Starling on

February 10, 2022, and determined that the use of force was appropriate and according to policy. *Id.* at ¶ 26; *see also Internals Affairs Memo* (Doc. No. 31-4 at 4).

### IV. Analysis

#### A. *Sovereign Immunity*

The Defendants argue, and Starling concedes, that his monetary claims against them in their official capacities are barred by sovereign immunity. Doc. No. 32 at 4-5; Doc. No. 41 at 11. A suit against a state employee in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, Starling's official capacity claims for money damages should be dismissed with prejudice.

#### B. *Qualified Immunity*

Defendants assert they are entitled to qualified immunity with respect to Starling's individual capacity claims. To determine whether defendants are entitled to qualified immunity, the Court must determine: (1) "whether the facts alleged or shown, construed in the light most favorable to [plaintiff], establish the violation of a constitutional or statutory right," and (2) "whether that constitutional right was

clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [his or her] actions were unlawful." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (quoting *Krout v. Goemner*, 583 F.3d 557, 564 (8th Cir. 2009); *see also Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).[4]

### 1. Excessive Force/Failure-to-Protect Claims

Starling argues that Bass used excessive force when he sprayed him on February 10, 2022, and that Johnson failed to protect him from this unreasonable use of force.[5] The unnecessary and wanton infliction of pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. "Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7). *See also Whitley v. Albers*, 475 U.S. 312, 322 (1986) (holding that, in an excessive force case, there must be "a reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of

---

[4] Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[5] To succeed on a failure-to-protect claim, a plaintiff must show that there was a substantial risk of serious harm to him and that defendants were deliberately indifferent to that risk. *See Irving v. Dormire,* 519 F.3d 441, 447 (8th Cir. 2008).

force or the existence of arguably superior alternatives"). Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate.[6] *Jones v. Shields*, 207 F.3d at 495. Unless "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.'" *Johnson v. Bi-State Justice Ctr./Arkansas Dep't of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993) (*citing Whitley,* 475 U.S. at 322). The Eighth Circuit Court of Appeals has further held:

> [W]hen an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."

---

[6] A plaintiff need not allege significant injuries to state an excessive force claim. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178-79 (2010) (abrogating the *de minimis injury* rule in excessive force cases, and clarifying that the extent of the injury is only one factor to be considered when resolving the "core judicial injury" of "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"); *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (holding that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of the force applied, is not in and of itself a threshold requirement for proving" an excessive force claim). However, the extent of a plaintiff's injuries may constitute evidence of the amount and type of force used, and a greater than *de minimis* use of force is required. "Even where the force is unjustified, 'not every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind,' does." *Burt v. Nurse R.N.,* No. 4:19-CV-00040-SMR-CFB, 2019 WL 8752341, at *2 (S.D. Iowa Mar. 27, 2019) (citing *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)).

*Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

The question in this case is whether Bass acted maliciously and sadistically when he sprayed Starling with chemical spray on February 10, 2022, and whether Johnson failed to protect Starling from an unreasonable use of force. Starling does not explain why Bass would be motivated to punish him, but asserts that Sterling refused to talk to him about why he was being moved and administered OC spray with no warning after telling him to "catch the cuffs."

It is well settled that a limited use of mace or chemical spray to control a recalcitrant inmate does not constitute excessive force. *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (finding a limited application of chemical spray a "tempered response" to control a recalcitrant inmate who had refused and questioned a direct order from his supervisor and refused to return to his barracks); *Treats v. Morgan,* 308 F.3d 868, 873 (8th Cir. 2002) ("The test is whether the officer's use of force was reasonable under the circumstances, or whether it was punitive, arbitrary, or malicious."). In *Burns v. Eaton*, the Eighth Circuit Court of Appeals affirmed a grant of summary judgment in favor of an officer where the prisoner-plaintiff was warned that he would be pepper sprayed if he did not "catch the cuffs" so he could be returned to his cell from a shower cell. 752 F.3d 1136, 1138-1140 (8th Cir. 2014). The prisoner did not comply but instead threw objects and spit at the officer, and the

officer sprayed him with a small amount of pepper spray after "each aggressive act of defiance." *Id.* at 1138. The Court rejected the prisoner's argument that the force was excessive because he was locked in a shower cell and posed no threat to the officer, explaining:

> At that point, [officer] Eaton no longer faced the relatively simple task of cuffing [prisoner] Burns and escorting him back to his cell. Eaton now faced a recalcitrant inmate. He could not simply leave Burns in the Isolation Unit shower cell, where he did not belong. Either Burns must be persuaded to comply with the command to return to his cell, or someone must enter the shower cell and forcibly remove him. Thus, Burns's contention that he posed no threat because he was alone in a locked cell ignores the reality of what was required "to maintain or restore discipline" in this situation.

*Id.* at 1139. The Court further noted that there was no evidence of a "malicious motive to harm," or "evidence that the force used was so greatly in excess of that needed to restore and maintain order." *Id.* at 1140.

The Court has carefully reviewed the video recordings of the February 10 incident. It unfortunately begins just before Bass sprayed Starling and does not reveal what transpired beforehand. However, Starling does not dispute that Bass told him to "catch the cuffs" before he was sprayed once. The video shows that Starling was nowhere near his cell door, but was instead pacing around his cell. Starling also acknowledges that he saw the can of spray on Starling, that he had earlier refused to move to a new cell until he spoke with an officer, and that Bass had come to speak to him about 30 minutes before the incident and told him he was

going to move. While Starling wanted to have a longer conversation about why he was being moved, the record clearly shows (and Starling admits) that he was refusing to do so; he was therefore a recalcitrant inmate, and Bass' use of chemical spray (along with Johnson's failure to intervene) was reasonable under the circumstances, even if Bass did not specifically warn him he would use chemical spray beforehand. "[U]nder current case law, a failure to warn that force will be used, standing alone, will generally not preclude summary judgment in an officer's favor. Generally, there must be other conduct." *See Wright v. State of Arkansas*, No. 4:15-CV-452-BSM-BD, 2016 WL 3023845, at *3 (E.D. Ark. Apr. 26, 2016), *report and recommendation adopted,* No. 4:15CV00452 BSM, 2016 WL 3024081 (E.D. Ark. May 25, 2016) (citing *Walker v. Bowersox,* 526 F.3d 1186, 1189 (8th Cir. 2008) (failed to warn coupled with "super-soaker" amount of spray); *Treats v. Morgan, supra* (prolonged burst of pepper spray without warning and inmate denied shower and clean clothes/bedding for three days afterwards)*;* and *Lawrence v. Bowersox,* 297 F.3d 727, 730, 732 (8th Cir. 2002) (inmates' faces, bodies, and cells soaked with pepper spray from a MK-46); *Foulk v. Charrier*, 262 F.3d 687, 692 (8th Cir. 2001) (inmate awakened and sprayed with no warning, then sprayed again after becoming compliant, and not allowed to shower for days)). Likewise, in *Burns*, the Eighth Circuit distinguished its cases finding the use of chemical spray punitive or arbitrary, stating "the few cases where we denied summary judgment in Eighth Amendment

excessive force claims based on pepper spraying have involved no warning this force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical, refusal to allow the victim to wash off the painful chemical for days, and/or use of additional physical force." 752 F.3d at 1140.

Even if the Court assumes that Bass issued no warning before he sprayed Starling, there are no other factors indicating that Bass used an excessive amount of force. Despite Starling's contention that an excessive amount of spray was used, the video clearly shows that Bass released only one short burst of spray.[7] No other force was used, and once Starling allowed Johnson and Bass to handcuff him, he was taken to the shower and handed a bar of soap to wash off.[8] He was also promptly seen by a nurse. And neither Starling's medical records nor the video evidence indicate that he suffered any injury by the use of chemical spray, other than discomfort.

In these circumstances, Bass' use of chemical spray did not constitute

---

[7] As stated above, if opposing parties tell two different stories, as is the case here, the Court is required to view genuinely disputed material facts in a light most favorable to the nonmoving party, **as long as** those facts are not so blatantly contradicted by the record that no reasonable jury could believe them. The Court finds that the facts alleged by Starling regarding the amount of spray are so blatantly contradicted by the record that no reasonable jury could believe them. The Court is therefore not required to view the facts in a light most favorable to Starling, and declines to adopt his version of the facts for purposes of ruling on this motion. *See Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017).

[8] Starling alleges the water at the prison was dirty with high levels of iron and rust. However, he does not assert a claim against Bass or Johnson based on the water, and acknowledges that they were not responsible for the water. *Complaint* at 14; *Starling Deposition* at 67.

excessive force but instead constituted a good faith effort to maintain or restore discipline when Starling refused to be moved to another cell. And because there was no constitutional violation by Bass, Johnson is entitled to qualified immunity on Starling's failure-to-protect claim as it relates to the use of chemical spray.

### 2. Conditions-of-Confinement Claim

Finally, the Court addresses Starling's claim that Bass and Johnson violated his Eighth Amendment right to be free from cruel and unusual punishment by leaving him naked in the shower for 1-2 hours. Even if these conditions were "objectively, sufficiently serious" to amount to a "denial of the minimal civilized measure of life's necessities," as required to establish unconstitutional conditions of confinement, *Farmer v. Brennan,* 511 U.S. 825, 834 (1970), Starling has provided no evidence that Bass or Johnson were responsible for the length of time he spent in the shower. Starling admitted that Bass and Johnson left after placing him in the shower, and he did not see them again. *Starling Deposition* at 54-56. His belief that he overheard Johnson ask another sergeant if he was still in the shower almost two hours later is not sufficient to show that Johnson was responsible for the length of time he spent in the shower. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted). Bass and Johnson are therefore entitled to qualified immunity on

Starling's conditions-of-confinement claim.

## V. Conclusion

The Defendants' motion for summary judgment (Doc. No. 31) is granted and judgment is awarded in the Defendants' favor. Starling's claims are dismissed with prejudice.

IT IS SO ORDERED this 14th day of March, 2025.

_____
UNITED STATES MAGISTRATE JUDGE